Good morning. May it please the court. My name is Helen Bruner. I'm an assistant United States attorney here to represent the United States. This court should reverse the district court's order suppressing Mr. Schesso's extensive collection of child pornography for several reasons. First, the affidavit in this case provided sufficient probable cause to support a warrant that allowed for the seizure and search of Mr. Schesso's computers and associated storage devices for all child pornography, not just the one video that he had offered for download. The fair probability that child pornography would be found on Mr. Schesso's computers and in his possession is established by the fact that he made available to anyone using the eDonkey peer-to-peer file sharing program an 18-minute video that showed the sexual assault of a child. This fact, along with the information about child pornography collectors and the retention of data on computers and the common sense inferences to be drawn from those facts, establish probable cause for the full extent of the warrant as issued. Second, the warrant, the court found that the warrant was not stale, a finding that was correct, and to the extent that the warrant was not stale, there is no basis for a finding that the passage of time should have limited the extent of the warrant in this case. Indeed, the defense itself conceded that if the information was not stale, that the warrant provided probable cause for the search of Mr. Schesso's computers. So that alone should have ended the issue. The only exception, quite frankly, that the defense raised in that regard was the SD card, the little multimedia card for the camera. But that is answered very quickly by the fact that Mr. Schesso's computer had in his tower computer, his supercomputer, had a port where you insert that little card, much like a DVD port on another computer, so you could easily write to or download from the SD card. Third, the warrant was not lacking in particularity. It very specifically talked about the types of computer equipment that could be seized and more particularly described exactly what could be searched for and seized from those items. That is to say, evidence of the possession in dealing in child pornography. And so the warrant itself was facially valid, which leads me to the next point, which is that the only thing that was identified by the government on this computer was child pornography, precisely the items within the scope of the warrant as issued. And the defense has not really suggested to the contrary. What the defense is suggesting is that the search here was unreasonable, based largely on the inherent nature of a computer search and seizure, and that is that a computer will have things on it that are beyond the scope of the warrant. It seems to me that, Ms. Bruner, that that really is the nub of the argument between the parties and that that in turn brings us to what the comprehensive drug testing case means, because as I understand their argument, it really has to do with you can always say that when you go into a computer, you know what you're going to find, so you've got to rummage around. The files might be false files. There's, you know, things hidden behind things. There's different ways that there's doors, et cetera, trap doors. So what I think they're saying is that you need a procedure so that if you are rummaging around, that you can segregate some of these things and then they turn to the comprehensive drug testing. So that brings me to my question, really, is what is your view on what's required under that case, the Embank case, and how does that fit in with the older case, Temura? Okay. Perhaps if the court would permit me, I will take those questions in reverse, because I think one informs the other. I think in Temura, we had a situation where the government took more, and I will use the term over-seizure because I think there's confusion between over-breath, and by that I mean whether the probable cause supports the warrant as written, and over-seizure, which is taking more than the warrant permits. Temura was a case involving over-seizure, and the court there suggested that the government should have, under those circumstances, either if it could anticipate the over-seizure, ask permission from the magistrate judge, and if it couldn't, then at least seal those items and then go back to the judge for permission before it is searched off-site. But what is key in Temura is Temura did not suppress the evidence that was within the scope of the warrant, even though it criticized the government's taking of those items for off-site search and then offered suggestions on things that the government should do in the future, and taking that then to comprehensive drug testing. Comprehensive drug testing, I think, having now read it more times than I thought was humanly possible, I think is a bit of a confusing case, because it arises in the context of a motion for return of seized property and not suppression. In fact, the protocol and regulation section of that opinion is in a concurrence that's not binding, correct? That is absolutely correct. That's a five-person concurrence, correct? That's correct. But when one looks at this case as a motion for return of seized property, what one can certainly say from that is, again, that there needed to be some measure of information provided to the judge beforehand to authorize the off-site seizure. I don't think CDT says anywhere in its opinion that there needed to be a specified protocol. To the contrary, I think the cases of this court do not suggest that there needed to be a specified protocol. What CDT talks about in the language that is now in the concurrence is plain view waiver, a filter team at return of property, and things of that nature that would be important in the context, I think, of that case. There was no filter team here, was there? There was no filter team specified in the warrant per se, as I would understand a filter team where never the twain should meet between the searching agent and the case agent. But having said that, the search here was conducted by a forensic agent, not the investigator in the case. And in any event, we come back to the situation where what was seized here was precisely that which the warrant allowed, the child pornography. Same with the plain view. There was nothing seized here that was in plain view. Why did the U.S. Attorney not go to the federal magistrate for the warrant? Why did they go to the state judge for the warrant? Your Honor, if I could make one correction, the U.S. Attorney's Office was not involved in obtaining the warrant. This case had not been presented to our office for prosecution. Having said that, there was a federal agent involved in the investigation. It had been brought to the attention. The information was first brought to what was then Immigration and Customs Enforcement, and that agent certainly did most of the investigation in the case. The agent decided to go to the state judge. The agent was part of a federal state task force, and, I mean, and so as part of the task force, the task force, state task force officers agreed to take it over and take it to the state. Having said that, I'm not trying to duck the fact that the comprehensive drug testing opinion played a role here because certainly as the record in this case demonstrates, ICE at the time had a, in terms of their decisions and policymaking with respect to what that now amended opinion meant, was comply with it, but don't waive plain view. And what perhaps is even more confusing is also in the record. The judges in the Western District of Washington clearly required a plain view waiver as well as a filter team. Judges in other districts did not, and the agent clearly indicated, and it's in, I can pull the record site if the court wishes, it is in the record before this court that that was not true in all districts. Can I ask you a question, which I don't think was in your briefing, so you may not be able to respond, but subsequent, I mean, at the time that this search took place, I believe, or at some point, there was an amendment to the Federal Rules of Criminal Procedure, 41E2, which allows an over-seizure in the particular context of computers. Has your office or have you analyzed how that affects the court's analysis now that we have a federal rule that's specifically on point? Your Honor, we have certainly given some thought to that, particularly in the context of the Comprehensive Drug Testing Inc. decision, and I think the conclusion we would draw from that is that the rule does permit the off-site seizure. And in fact, under the rule, I think that it probably would obviate the need to provide the court with the request and justify that. On the other hand, this warrant very clearly went through all the reasons why the computers needed to be taken off-site to be searched, and it actually does talk at great length, although it doesn't say how the search in this case is going to be conducted. It talks in great length about how some searches can be conducted using keyword searches and are very easy to do, and some are not so easy to do, and that until they begin the search, they will not know. Well, CDT does require at least, what, greater vigilance, right? Absolutely. What does that mean here? What greater vigilance was taken in this particular case? Annie? Well, I don't know that – I guess I would answer the court's question this way. I think the vigilance here from the state court judge who signed this warrant was to very carefully look at what had been laid out, and it's not a bare-bones warrant at all. It lays out precisely what the officers intend to do and how they're intending to do it and where they're intending to do it. I think the real nub of the issue, though, is not so much whether the warrant was okay but what the government did after the seizure took place, because they just kept these things for, what, months, and there was no filter team, there was no particular date of return, there was no segregation. I mean, it was just a fishing expedition once they got all the computer stuff, right? They could look at whatever they wanted. Absolutely not, Your Honor. I would say, first of all, with respect to the item seized, the first item was returned to Mrs. Schesso, her laptop computer, within 10 days of the search. That is in the record. The search itself was then conducted during July of the computers, I should say. It was conducted during July and August. By the end of August, as the report from Ms. Holbrook, the forensic examiner, indicates, she had sent the images, the 3,400 images and the 632 videotapes, to the National Center for Missing and Exploited Children. So her search was essentially finished at that point. Mr. Schesso was charged in November, and the report issued in early January, and once he made a request for the return of items on his computers that were not contraband, further efforts were made. Yes, the government resisted making those efforts because the computers had contraband on it. Now what we're talking about is going through the remainder of the things that had not been searched, and I think this is critical here. Ms. Holbrook didn't actually go through absolutely everything that had been seized because they had gotten to the point where they had 3,400 images and 632 videos, and quite frankly at that point a decision was made that resources could be better spent doing something else. So I think that that also informs this. But I would come back to answering the Court's question about vigilance. I think vigilance here may also depend on the circumstances of the case, and in this case we're searching for child pornography. I don't mean to suggest that Mr. Schesso has any less privacy interest in the material on his computers, and that's not what I'm trying to suggest here. But the situation is different from, for example, looking at a business computer that may contain records of many, many, many people's medical records. So I think under the circumstances of this case, particularly where nothing was seized that was outside the scope of the warrant, and we can talk about the SD card that the defense disputes further, but I think in that context no more vigilance was needed here, and certainly where a plain view waiver would not have changed the situation here. Nothing outside the scope of the warrant was seized. We're not relying on plain view. The filter team, again, would have been a prophylactic measure. It simply does not particularize the warrant, and all those things go to is the reasonableness of the execution, and in this case no one's arguing other than saying we seized too much and didn't return it quickly enough that the search itself was unreasonable. All right. Let's hear from Mr. Schesso's counsel. May it please the Court. My name is Colin Simon. I represent Mr. Schesso, and I am most definitely arguing that the search in this case was unreasonable in all respects. In terms of the warrant that was issued, which was facially overbroad, in terms of the manner of execution of the search once the items were seized. I'd like to direct the Court back to the very language of the warrant application that was approved in the state court. The application sought authorization to peruse, and I'm quoting, peruse all stored data, period, and that is what the warrant authorized. Now, although I don't think it's in the least bit dispositive, it's important to remember the backdrop of this case. CDT2, the unrevised unbonked decision, was the controlling authority, and I don't think there's any credible dispute that what the government did here was to try and do an end run around the requirements of this court to get what it is seeking the court now to permanently allow, a broad computer exception to the Fourth Amendment that will allow agents unlimited data searches, no matter how limited or old the probable cause that the initial search is based upon. Could you also address the, because I'm struggling with this a little, the federal rule of criminal procedure 41E2. One of the things, even before the comprehensive drug testing, before the best practices section became part of just a concurrence, there was a question about whether those procedures were constitutionally required or was merely our supervisory authority over magistrates. It's not expressly stated there. And if it's, so the first question is, is it constitutional or supervisory? If it's supervisory, then is that superseded by the federal rules of criminal procedure, which now allow that sort of over seizure of computer items? Your Honor, but for now a question of the appropriate memory, our argument is predicated entirely on the Fourth Amendment. Rule 41. So are you saying that the federal rule might be unconstitutional? No, because CDT itself and Tamura themselves, firmly grounded in the Fourth Amendment, contemplate over seizure in some instances. So, for example, in a case like this, if we had a situation where the agents had collected the computer drives, the hard drives or the PCs that Mr. Schesso had at his house, and had a filter team, which it did not, because the person who examined the computer data here was actually one of the investigators whose name appears in the warrant application. So clearly not a filter team. But if they had seized everything and followed Tamura, and in Tamura's case applied for a protocol or applied to the magistrate for the appropriate procedures for segregating the evidentiary data from data that is So the over seizure itself, even CDT says that, will occasionally happen. But the question is then, as in Tamura, how do you segregate within those intermingled records and the intermingled data without invading privacy rights? As I understand the government's argument, they're saying there was probable cause to seize everything that they did seize. And so it wasn't analogous to Tamura where there was a, they knew they wanted specific files. They couldn't find them fast enough, so they took the whole collection of files. Whereas here, as I understand the argument, there was probable cause to think child pornography could be anywhere within any of these electronic storage devices. So their argument, as I understand it, is this isn't an over seizure case. Why is that wrong? It's not necessarily wrong. As I indicated just a moment ago, I think if they had simply, if they had taken all those storage devices, with some exceptions that we talk about as a secondary argument. But if they, for example, seized all the computers and had a, for example, protocol that was approved by a federal magistrate for segregating within those computers the relevant files and data, again, we would not be here today. But I think what I'm kind of struggling with, and maybe you can help me, is this protocol is sort of coming on down as if something is required. And where do you get that from? Oh, I think that's directly from what the CDD plurality said is the venerable president of Timur in the Fourth Amendment itself. Well, but the CDC plurality is not the binding decision. No, Your Honor. And so, I mean, I understand, you know, that there is this sort of battle going on out there, and I think it makes a lot more sense. You can protect your warrant and your seizure if you do those things. There's no doubt you would stave off some of the arguments. But we're talking about it in somewhat in the briefs as if it were a requirement. Not at all, Your Honor. Okay, so it's not a requirement. And if it's not a requirement, we're back to where I think you started, which is the reasonableness question. Well, correct. And what I think Timur is saying in its essence and what was updated, regardless of whether you look at the plurality or the concurrence, in regard to Timur is that when you are applying a reasonableness analysis under the Fourth Amendment, you do, for example, what the court did recently in Cotterman. If the relevant inquiry, as I'm quoting here, is always one of reasonableness, that reasonableness determination must account for differences in property. And that is a quote from Cotterman at 966.  in terms of a personal computer involves uniquely sensitive information. In Timur, we were dealing with 11 boxes of records and 51 file cabinet drawers. What the government is calling Mr. Shesha's supercomputer had about a terabyte total in all of his digital media devices, a terabyte of storage. You can buy a terabyte of storage, a laptop with a terabyte of storage, for about $800. So the fact that there is an expectation of privacy due to the amount and type of information that we now typically store on our personal computers has to inform the reasonableness analysis. That's true, but here they're looking. They have some very specific information that, based on experience, as to it's not just a question of is he storing pornography that might be mixed in among various files, but he's in these peer-to-peer file sharing arrangements, or at least expectantly might be because he certainly was on the one. So doesn't that change how they go about it and it's not just a drag net in that case? Well, Your Honor, we don't know how they went about it because they chose not to actually make that part of the record. But what we do know, what is undisputed, and what is informing this reasonableness analysis in terms of the scope of the search, is the fact that there's no dispute on this record, that if they had simply used, for example, the NK software or everything that is discussed in terms of the available methods for limiting the scope of the search, they would not have had to peruse all of the data in the sense of opening up the files. So that gets you back to the question. It reminds me of some of those constitutional things where you have to do something, but you don't necessarily have to do the least restrictive thing. So you don't have to take the least restrictive approach for it to be reasonable. And the question is where does this fall between what might be preferable but what might be reasonable? And what do you think would be the guideline to get us to the answer to that question? The Court already has the guideline from Tamora and CDT, in my opinion, Your Honor, which is that CDT, the revised opinion there, stops short of saying you have to do one, two, three, four, five things in every computer case in order to comply with the Fourth Amendment. And it was appropriate, I think, that the Court backed off of that because it's very important that magistrates have discretion to impose or require appropriate limitations to restrict the search only to relevant data in individual cases. But we're not dealing with a situation here where I'm quibbling about the method of segregating the data. We're dealing with a case where the government intentionally circumvented any review by a federal magistrate to peruse all of the data. But does that matter? I mean, the state magistrate is bound by the Constitution to the same extent as the federal magistrate. So to the extent there's some constitutional reasonableness requirement, it's equally applicable to the state magistrate. I just don't see how that makes a difference. That's correct, Your Honor. It implies there's context here because the Court has already, I think, given substantial guidance to the government about what is expected in terms of doing these intermingled data searches. But if this had come up in the state context, I'm sure we wouldn't be arguing the same Fourth Amendment arguments there. So, again, it comes down to the Fourth Amendment, but to the extent that the government is claiming that, well, it's really an all or nothing proposition. We either get to peruse all the data or we can't prosecute these cases. It is manifestly untrue. The postal inspectors, as indicated in the record, were submitting warrants in compliance with the initial en banc decision and routinely conducting child pornography investigations under what they're saying are unduly restrictive conditions. And to bring it back to the point, Your Honor, I am not saying that the safe harbor provisions of the revised en banc opinion are the requirement. I'm not saying that. What I'm saying is that a federal magistrate, if this had been submitted for proper review, would have required some limiting provisions on the ability to peruse all the data that would have foreclosed what happened here, which is a seize it all and search it all later with no limits on the unfettered discretion of the investigators to look at whatever they wanted for as long as they want. They kept the computers for over a year. Getting to the suppression issue, even in Temura, the government points out the court said that suppression wasn't the remedy because all of the items introduced at court were within the scope of the warrant. So how does that affect the analysis here? Your Honor, I don't think that's quite what the court said in Temura. And if you look at Temura, the court said that this was a close case in terms of whether suppression was required. And in fact, the warrant was overbought, unconstitutionally overbought in Weber. And also that the officers should have known the applicable standards. But the court also said that the rules were not clear at this time in terms of what was required in terms of a magistrate's oversight of an intermingled record search. And in that case, and this was also interpreted in Hill more recently, Your Honor, they also concluded the warrant for the computers there, very similar to ours, was unconstitutionally overbought. But the proper steps at the time, quote, were not defined. And there was no evidence also that the officers had circumvented controlling precedent. Well, here, if nothing else, CDT has made clear that you cannot seize intermingled data and do what the government did here, which is retain that data for as long as you want and exercise unfettered discretion in terms of what you're looking at during that time. If nothing else, that is very clear now from Temura and CDT. Well, we have five judges in CDT, so I'm not sure how clear it is for the Ninth Circuit. Well, then I'm hoping you can provide greater clarity, Your Honor. But again, I think my argument turns to this. I think we're only three. Let me ask you this, and we may need to enlist more. You know, Hill has this language, as we have noted, we look favorably upon the inclusion of a search protocol, but its absence is not fatal. Now, has that changed because of CDT? It didn't necessarily have to be. I think what happened is that CDT has clarified what Temura always said, is you may not necessarily need a particular forensic software program. You can choose the methodology you want for segregating data. You may choose to use a filter team, somebody outside the investigation who is looking at these files if it's necessary. You have to bear in mind, Your Honor, that this is a situation where you're required to sit and open up every file to know what's in it. The NCASE software, as established with our declarations below, for example, segregates all the image files regardless of what they're called or where they're hidden or whether they're password protected, and pulls them out of the general data to give an examiner the relevant, the potentially relevant evidentiary files. So there's no question it's perfectly feasible for the government to sort this data in a way that protects legitimate privacy interests. So then the question is, with that practical background and what Temura and CDT have at least strongly recommended in terms of protecting legitimate expectations of privacy, why would the why and how could this court approve a warrant that simply says you are entitled to seize everything and peruse it at your leisure? I don't think those two positions can be reconciled. And that's why I said earlier, Your Honor, if it was simply a matter of them having a search protocol or using a filter team and we were quibbling about whether it was effective or some of the files that were looked at shouldn't have been looked at, this would be a very different case. But the facts of this case are unique. We have an extraordinary limited basis of probable cause. One file that was identified as being available for distribution 21 months before the actual search and nothing else. And at the same time, as the warrant application itself says, a request for authorization to pursue all the data. That's why I think this is an appropriate case for the court to maybe further clarify what is required because we are not in a gray area. This is an area where we are in direct violation of what the Supreme Court said back, as far back as Coolidge versus New Hampshire. Searches deemed necessary should be as limited as possible. It's a bedrock principle. 403 U.S. at 463. So are you saying that federal rule of criminal procedure is wrong? I'm saying that they, I'm saying there's no conflict if you read the rule saying that is necessary and appropriate and you need to take all of the, for example, data storage devices off-site to do a review. That can be perfectly well reconciled with what the court is saying is required greater vigilance on the part of magistrates and reviewing courts like Judge Bryan in ensuring that that review process of overseas items is segregated appropriately to protect privacy interests. And I think I'm basically out of time at this point, Your Honor. Thank you. Thank you very much. Your Honor, if I could have just a few minutes for rebuttal. First, let me address the assertion that the probable cause was very limited here. I want to address that just briefly because the fact of his offer on a file share program, a peer-to-peer program, shows a great deal about this man that it goes beyond just one video. He possessed it. He clearly had received it because it was a video that he did not create. That was clear also from the record. And he was offering it for distribution. That puts him plainly in the category of those who collect, who distribute, and puts him into the, where the inferences to be drawn from the collector profiles and the peer-to-peer network material in the warrant is important. Secondly, the feasibility of using search protocols. Yes, there are ways to search computers, and certainly NCASE is something that was used in this case. But I think that to say it's really simple oversimplifies it. Mr. Mooney's declarations notwithstanding, I think if you look at the other declarations in the record from the agents, it's clear that even Mr. Mooney with his supposed simple way of sorting this out could not sort out the child pornography from the other files. You said there was a forensics agent, not an investigator, and I heard something slightly different. Agent Maggie Holbrook is a forensic examiner. Her expertise is referenced throughout the affidavit because Detective Kennedy consulted with her about computer searches and what she had learned about computer searches. She certainly went to the site in order to collect the computers, and then she was the one who searched them there. But that is her role as a computer forensic examiner, not as the case agent in this case. That's the distinction. With respect to the postal inspectors, I would simply note that that was a case that involved a sting. The warrant isn't entirely in the record, but it involved a sting that had been written and conducted by the Postal Inspection Service. So this was a case that already had federal government involvement in many, many layers, and therefore, for that reason, a federal warrant was obtained. And because the magistrate judges in the Western District required that at the time, we needed to do that. Finally, or two final points, and I'll sit down. The fact that there is a terabyte of data on Mr. Chessa's computer actually proves the point. It's very difficult to go through all of that kind of material. And there's no suggestion here that the government did, in fact, go through all of that material until the motion for return of seized property when in order to ensure we weren't returning contraband, more chop horn, we had to go through the material. So it sort of put us in that odd position of doing that, and that was actually done at the end with a filter team because we had already completed the search and made that representation to the district court, something that's also in the record. And then finally, there was a comment about the fact that the government did not make, as part of the record, how the search was conducted in this case. That, quite frankly, proves the point. That was not an issue in this case. The issue certainly, yes, did you use a filter team? Did you ask for a filter team? No. That part's clear, but the actual reasonableness of how Maggie Holbrook separated out this material was not necessarily in play in the motion to suppress. Thank you. I thank both counsel for your argument this morning. The case of United States v. Shesso is submitted, and we're adjourned for the morning. All rise. This court, for this substance, stands adjourned.
judges: Gilman, McKeown, Ikuta